[Civ. No. 1425.   Third Appellate District.—June 7, 1916.]

## DEMETRA BRUSCHI, Appellant, v. IDA B. COOPER et al., Respondents.

IRRIGATION ACT—CERTIFICATE OF SALE AND DEED—ERRONEOUS RECITAL OF NAME OF PERSON ASSESSED—VOID DEED.—A certificate of sale and a tax deed made pursuant to proceedings had under the Irrigation Act of 1897 (Stats. 1897, p. 254) are both invalid under the provision of section 35 requiring the assessment-book to specify the name of the person assessed, section 45 requiring the certificate of sale to state the name of the person assessed, and section 48 requiring that "the matter recited in the certificate of sale must be recited in the deed," where the name of the person assessed appeared on the assessment-book as "D. Bruschie," and in the certificate and sale as "D. Bruscia."

ID.—NAME OF PERSON ASSESSED—RECITAL IN DEED.—The provision of section 48 of the Irrigation Act that "the matter recited in the certificate of sale must be recited in the deed" includes the "matter" that the deed shall contain the name of the person assessed, when known.

ID.—TAX DEED AS CONCLUSIVE EVIDENCE—POWER OF LEGISLATURE.— While the legislature can make a certificate of sale or tax deed conclusive as to matters which are in their nature nonessentials, it has not the power to make such documents conclusive as to any of the essentials of listing, valuation, apportionment or notice.

ID.—TAXATION—LISTING OF LAND FOR ASSESSMENT—STATEMENT OF NAME OF OWNER.—The listing of land for assessment necessarily means that the name of the owner, if known, and a description of the property assessed must be "*correctly* stated."

ID.—TAX DEED AS CONCLUSIVE EVIDENCE—PROCEEDINGS INCLUDED.—The provision of section 48 of the Irrigation Act making the tax deed conclusive evidence of the regularity of all the proceedings from the assessment *to the deed means* all the proceedings other than those as to which the deed by said section is made *prima facie* evidence.

ID.—DATE OF SALE—MISRECITAL IN CERTIFICATE—EFFECT OF.—Under
    section 45 of the irrigation law providing that the collector must
    make out in duplicate a certificate dated on the day of sale stating
    (when known) the name of the person assessed and the time when
    the purchaser will be entitled to a deed, a certificate of sale dated
    March 3, 1906, instead of February 20, 1906, the day of sale, is not
    void, where it is stated therein that the property may be redeemed
    within twelve months from the former date, which is stated as the
    date of sale.

APPEAL from a judgment of the Superior Court of
Stanislaus County. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

J. R. Webb, and George Cosgrave, for Appellant.

W. H. Hatton, and Hatton & Scott, for Respondents.

CHIPMAN, P. J.—This case was before the court and
decided January 29, 1916, reversing the judgment of the
lower court. A rehearing was granted and further light on
the case invited, particularly upon the validity of the assess-
ment, certificate of tax sale, and the tax deed involved in the
action. In discussing the questions presented we found what
seemed to us a very close analogy between the general code
provisions for assessments and delinquent tax sales and the
provisions of the Irrigation Act. Following the decisions of
the supreme court as we understood them, we were con-
strained, with some reluctance, to hold the title asserted by
defendants to be invalid. In reviewing the opinion hereto-
fore filed in the case, respondents contend, first, that section
35 of the Irrigation Act (Stats. 1897, p. 254) does not require
that "the property must be assessed to the owner." The
section does provide that the assessor "must prepare an
assessment-book with appropriate headings, in which must be
listed all such property within the district, in which must be
specified, in separate columns, under the appropriate head:
(a) the name of the person to whom the property is assessed
(if the name is not known to the assessor the property shall
be assessed to 'unknown owners.' . . . " The assessment
was made not "to unknown owners" but to a person named,
viz., D. Bruschie. How far a mistake in the name may

affect the validity of the assessment need not now be considered. The fact is that the owner's name was given.

Second. It is urged "that section 45 of that act does not absolutely require that the certificate of sale must state the name of the person assessed. Said section 45 requires the collector to make out in duplicate a certificate dated on the day of sale, stating (when known) the name of the person assessed, etc." We have seen that the assessment was not to "unknown owners" but to a person named D. Bruschie, presumably believed by the assessor to be the owner. In making out his certificate the collector gave the name of the person to whom the property was assessed as D. Bruscia. It is claimed that the statute expressly makes the naming of the person assessed "subject to the condition that the assessor knows the name of the persons assessed." This may be so where the assessment is to "unknown owners," but where an owner is named in the assessment and is named in the certificate, it cannot be said that it was the case where the person was unknown.

Third. It is contended that "the irrigation act does not require that an irrigation tax deed issued thereunder 'shall correctly recite the name of the person to whom the property was assessed, as a condition of its validity,'" as held in the former decision. Section 47 provides: "If the property is not redeemed within the time herein provided, the collector, or his successor in office, must make to the purchaser, or his assignee, a deed of the property, reciting in the deed substantially the matters contained in the certificate," etc. It is true that the statute does not in terms require that the name of the person assessed must be recited in the deed, neither does it require a description of the property to be given, but we held, at the former hearing, that, in requiring the deed to recite "substantially the matters contained in the certificate," the name of the person assessed should be regarded as among the substantial matters to be recited if the name in fact did appear in the certificate.

We fail to discover, upon a re-examination of the statutory provisions relating to the subject, any satisfactory grounds on which to reach a conclusion different from that expressed in our former opinion. And we therefore adopt that opinion, which is as follows:

"This is an action, as set forth in plaintiff's second amended complaint, to quiet the title of plaintiff to lots 28, 29, 30, 31, and 32 in block 33 of the city of Modesto, Stanislaus County. An amendment was, by leave of court, made to the amended complaint stating that 'should the court find that defendants or either of them had expended money in payment of taxes or assessments on said property and are justly entitled to reimbursement of the same then plaintiff is ready, willing, and able to pay . . . such sum as the court may find that they are entitled to and offer to pay the same and to do equity in the premises.'

"Defendant Williams answered: Denied generally and specifically the averments of the said complaint; alleged that the cause of action is barred by sections 318, 319, and 322 of the Code of Civil Procedure; and, as a separate defense, alleged that prior to the commencement of the action defendant was and he still is the owner in fee of the said lots; that, on February 20, 1906, said lots 30 and 31 were sold to satisfy the tax levied on said property last referred to by Modesto Irrigation District for the year 1905, which said tax had become delinquent; that at said sale M. L. Cooper became the purchaser and, no redemption having been made, a deed of conveyance to said two lots was, on March 4, 1907, made to said Cooper, 'conveying to said M. L. Cooper absolute title to said real property'; that, on May 6, 1910, said M. L. Cooper conveyed said two lots to his wife, Ida B. Cooper, and, on December 26, 1911, said Ida conveyed the same to defendant Williams, and ever since said date he has been the owner of said real property. Similar averments in said answer are set forth as to lots 28, 29, and 30, defendant Williams thus deraigning title thereto.

"As a further defense it is set forth that plaintiff is precluded or estopped from instituting or maintaining this action for the following reasons: That, on December 26, 1911, said property was conveyed to defendant by good and sufficient deed for a good and valuable consideration; that since said date 'said defendant, at great cost and expense, to wit, about nine thousand dollars, has erected and built upon said premises a large and expensive building' and has made other improvements on said real property amounting to one thousand dollars; that plaintiff 'was fully cognizant of the erection of said building on said premises at the time said

building was in course of erection, and until and long after the said building was erected and completed, plaintiff made no claim to the ownership of said property or any part thereof'; like averments are made as to said improvements other than said building; that had defendant known or had he been informed that plaintiff made any claim to or interest in said property defendant would not have made said improvements; that, by reason of the foregoing, plaintiff 'intentionally endeavored to perpetrate and by instituting this action is now willfully, knowingly, and intentionally endeavoring to perpetrate a fraud upon said defendant to his loss in the sum of not less than fifteen thousand dollars.'

"For a further defense, that plaintiff is estopped from maintaining the action for the following reasons: That plaintiff is guilty of laches in that he 'abandoned said real property . . . and for many years prior to the commencement of the action, failed and refused to pay any taxes or assessments whatever levied upon or assessed against said property, . . . and that said real property and the whole thereof has frequently been sold for taxes,' and that plaintiff purposely refrained from paying said taxes for the purpose of attempting to defraud the purchaser at any sale of said property for delinquent taxes; that plaintiff was well aware of all said assessments and sales of said property; that following said sales certificates of purchase were duly issued with plaintiff's full knowledge and conveyance made without protest or objection by plaintiff.

"By way of cross-complaint, defendant sets up the facts first above stated as to the sale and purchase of said property for delinquent taxes and also pleads adverse possession by himself and predecessors in estate.

"Defendants Ida B. Cooper, Z. E. Drake, and F. E. Johnston answered: Denied plaintiff's alleged ownership; alleged ownership in defendant Williams on December 26, 1911, at which time he, said Williams, conveyed the south sixty feet of said property by deed of trust in which said Williams was party of the first part, the said Drake and Johnston parties of the second part, and defendant Ida Cooper party of the third part, to secure to said Cooper the payment of two thousand dollars and other sums, no part of which has been paid, and said deed of trust is a lien on said property and is in full force and effect.

"Defendant The Modesto Savings Bank denied plaintiff's ownership and alleged ownership in defendant Williams; it also set up a deed of trust by Williams, on the east eighty feet of the property, to secure a loan of two thousand dollars.

"Plaintiff answered the cross-complaint of defendant Williams: Denied the alleged adverse possession and denied that defendant Williams or his grantors or predecessors in interest have paid all or any taxes or assessments levied on said property; denied that plaintiff has no right, title, or interest in said property or that plaintiff's claim is without right.

"The court made findings in favor of defendants: That at the commencement of the action plaintiff was not and is not now the owner of said property or any part thereof or any interest therein, and is not entitled to the possession thereof; that the alleged cause of action in plaintiff's second amended .complaint is not barred by either section 318, 319, or 322 of the Code of Civil Procedure; that, prior to the commencement of the action, defendant Williams was and now is the owner in fee simple of said property. The court found further: That on February 20, 1906, the whole of said property 'was by the collector of Modesto Irrigating District sold to satisfy the assessment or tax levied and imposed on said real property by Modesto Irrigating District for the year 1905, which said assessment or tax had become and was delinquent at the time of said sale, said lots Nos. 30 and 31 of said block No. 33 in said city of Modesto being assessed and sold as one parcel to M. L. Cooper, and lots Nos. 28, 29, and 32 in said block No. 33 in said city of Modesto being assessed and sold as a separate parcel to said M. L. Cooper,' and said Cooper became the purchaser of all said lots; that thereafter, on March 3, 1906, the said collector made out in duplicate a certificate stating name of the person to whom said property, to wit, lots 30 and 33, were assessed, a description of the land sold for assessment, giving the amount and year of assessment, and specifying the time when the purchaser, said Cooper, would be entitled to a deed; that said certificate was signed by said collector and a copy delivered to said purchaser and a copy filed in the office of the county recorder of Stanislaus County. Similar finding was made as to lots 28, 29, and 32; that, immediately after the delivery by said collector of said certificates to said purchaser, he, the said purchaser, entered into the actual possession of the whole of

said real property and took actual possession thereof and claimed the same and thereafter and up to March 4, 1907, 'continuously and actually occupied, possessed, and publicly claimed said real property and the whole thereof as his property'; that said claim and possession was under said certificate of sale during the period from March 3, 1906, to March 4, 1907, 'and prior to the erection of the building hereinafter mentioned the whole of said premises was entirely uninclosed.' It is also found that said Cooper had like possession of said land claiming the same openly and notoriously from March 6, 1906, to May 6, 1910, and, during all said period, paid all the taxes and assessments levied or assessed against said property, and that no part of said property was redeemed from said sales, and that, on March 4, 1907, a deed of conveyance was made by said collector to said Cooper conveying said lots 30 and 31, and on said day a deed was also made to said Cooper by said collector covering said lots 28, 29, and 32, conveying to said Cooper absolute title to all said lots; that said certificates of sale were duly issued, delivered, and recorded, as were also the said deeds of conveyance, 'without any objection on the part of plaintiff'; that, on May 6, 1910, said M. L. Cooper conveyed all said property to his wife, Ida B. Cooper, who thereupon entered into actual possession of said property and, ever since said date and up to December 26, 1911, continued to occupy and possess said property openly and notoriously, and adversely during said period collected the rents, issues, and profits of said property, and paid all taxes levied or assessed against the same; that, on December 26, 1911, said Ida B. Cooper conveyed all said real property to defendant O. H. Williams for a good and valuable consideration, and ever since said date Williams has been and now is the owner in fee of all said property; that said Williams, on said date, entered into possession of said property and ever since said date has been in open and notorious possession thereof under claim of right and has paid all taxes levied and assessed against said property; that neither plaintiff nor any other person except said L. M. Cooper, Ida B. Cooper, and said Williams 'was or were in the possession of said real property or any portion thereof within more than five years before the commencement of this action'; that said occupation and possession 'was under claim of title by said O. H. Williams, M. L. Cooper, and Ida B. Cooper based upon

said certificates and said deeds of conveyance and exclusive
of any other right and hostile to any right, title, or claim or
right of possession of plaintiff, his grantors or ancestors';
that said Williams purchased said property in good faith and
paid therefor the sum of four thousand dollars; that, since
December 26, 1911, said Williams has erected on said premises
a building which cost about nine thousand dollars and has
made other improvements thereto amounting to one thousand
dollars; that plaintiff has made no attempt to pay any of
said taxes 'but has at all times been able, ready and willing
to pay the same.' The court finds the averments of the an-
swer respecting said loans, secured as alleged, to be true.

"Judgment was accordingly entered quieting defendant
Williams' title to the property. Plaintiff appealed from the
judgment under the alternative method.

"That the government title to the lots in question vested
in Francisco Bruschi, father of plaintiff, by deed of Charles
Crocker, November 8, 1882, seems not to be controverted.
On January 1, 1883, Francisco conveyed lots 28, 29, and 32
to Dimetra Bruschi. The name 'Dimetra' may be said to
mean the name 'Demetra' and would, in our opinion, fall
within the rule *idem sonans*. The identity of name carries
with it the identity of person. (Code Civ. Proc., sec. 1963,
subd. 25.)

"As to lots 30 and 31, plaintiff claims as heir and as a dis-
tributee under the will of Rosa Bruschi, his mother. By the
decree of May 27, 1905, in the estate of Francisco Bruschi,
lots 30 and 31 were distributed to Rosa. The decree of dis-
tribution in her estate recites that 'the residue of the estate,
consisting of the property hereinafter particularly described, is
now ready for distribution'; names certain nine heirs, among
them a son, Demetrio M. Bruschi, and devises in equal shares
'the residue of said estate of Rosa Bruschi, deceased, herein-
after particularly described and now remaining in the hands
of said administratrix, and any other property not now known
or discovered which may belong to the said estate.' The
property particularly described is $112.20 in money and a
promissory note of $547.06. Plaintiff was shown to be the
son and hence an heir at law of Rosa. We think it suffi-
ciently appeared that he had a one-ninth interest in lots 30
and 31 which were devised to Rosa and of which the decree

30 Cal. App.—44

of distribution in her estate made no disposition except under the clause 'any other property not now known.'

"Upon the question of estoppel pleaded, no fact is found except that said certificate of sale and said tax title deeds were issued 'without any objection on the part of plaintiff,' which is not in itself sufficient to establish an estoppel. Plaintiff offers in his complaint 'to pay to defendants or either of them such sum as the court may find that they are justly entitled to and offers to pay the same and to do equity in the premises.' There is no finding as to what payment plaintiff should make to defendants in the event of plaintiff's succeeding in the action or what the court would deem equitable—whether such payment should include all taxes and cost or the improvements made upon the lots, or both. The court found for the defendant Williams and it was not necessary to deal with this feature of the case.

"If the findings may be construed as showing title in defendant Williams by adverse possession, they are not supported by the evidence. The period of five years after the execution and delivery of the tax deed had not elapsed before the action was commenced, although it had elapsed if the date of the certificate of sale may be considered. However, the lots were not inclosed until about the time the building was erected on them by Williams in 1911; they had been used as a dumping ground for sand and storage of some loose personal property by a man who paid Williams a rental for such use, but otherwise there was no occupancy of the lots. There was no evidence showing what portion of the lots was thus used, even if such use could be regarded as occupancy, which we do not think would be so regarded. (Code Civ. Proc., sec. 322; *Cohen* v. *Anderson,* 22 Cal. App. 634, [135 Pac. 1096].) Defendant's claim that he held under color of title by virtue of the certificate of sale cannot be sustained, for a certificate of purchase issued at a tax sale does not constitute color of title. (1 Cyc. 860, 1099.) There must be an apparent transfer of title. (1 Am. & Eng. Ency. of Law, 859, 973; *Packard* v. *Moss,* 68 Cal. 123, [8 Pac. 818]; *Salt Lake Investment Co.* v. *Fox,* 32 Utah, 301, [125 Am. St. Rep. 865, 13 L. R. A. (N. S.) 627, 90 Pac. 564], where the court said: 'The fact that Moon went into possession under and by virtue of the tax sale certificate was, in effect, an admission on his

part that he held the property subject to the owner's right of redemption.')

"The court found against defendants on their plea of the statute of limitations.

"It seems to us that the judgment must stand or fall upon the strength of the title of defendant Williams derived through the tax proceedings which were taken under the act of March 31, 1897 (Stats. 1897, p. 254).

"Appellant relies upon the following points for reversal: 1. Insufficiency of the assessment; 2. Invalidity of the certificate of sale; 3. Insufficiency of the deed made pursuant to the sale.

"The assessment is attacked on the grounds: (a) That the assessment levied to pay the general expenses of the district is not segregated from the assessment to pay annual interest on outstanding bonds; (b) that noncontiguous lots are not separately assessed.

"The assessment was made pursuant to the authority of the above-mentioned act. Lots 28, 29 and 32 were assessed to D. Bruschie and lots 30 and 31 to F. Bruschie, and in each case the assessment was of the group of lots and not separately; also, the valuation was made on each group as a whole and not separately. As we have reached the conclusion that the certificate of sale and the deed of the collector of the district to defendant Williams are invalid, we refrain from passing upon the objections raised to the assessment.

"Section 48 of the act is relied upon by defendants as validating any and all the tax proceedings under which they claim. The construction given this section by the supreme court may as well be shown here as elsewhere. After stating that certain matters recited in the certificate of sale 'must be recited in the deed,' and that 'such deed duly acknowledged or proved is *prima facie* evidence of such matters,' the section reads: 'Such deed duly acknowledged or proved is (except as against actual fraud) conclusive evidence of the regularity of all the proceedings from the assessment by the assessor, inclusive, up to the execution of the deed. The deed conveys to the grantee the absolute title to the lands described therein free of all encumbrances, except when the land is owned by the United States, or this state, in which case it is *prima facie* evidence of the right of possession.'

"This conclusive evidence clause is the same as is found in section 3787 of the Political Code, except that the word 'other,' just before the word 'proceedings' is omitted in section 48 of the Irrigation Act. The supreme court, in *Escondido High School Dist.* v. *Escondido Seminary*, 130 Cal. 128, [62 Pac. 401], said: 'If it were necessary to pass upon the question in this case, it might consistently with recognized rules of construction be held that the language used in the act of 1887 (the language is the same in the act of 1897) means all the proceedings other than those as to which the deed is made *prima facie* evidence, and the act would thus be relieved from the constitutional objection in support of which appellants cite copious authorities.' The court did not find it necessary to decide the question, but we do not hesitate to hold that the section means what is thus, at least inferentially, said it does mean. Otherwise, construed literally, the deed is made *prima facie* evidence of certain seven enumerated things and conclusive evidence of the same things, as well as all others. The deed is made *prima facie* evidence that '(a) the property was assessed as required by law; (b) that the property was equalized as required by law; (c) that the assessments were levied in accordance with law; (d) the assessments were not paid; (e) at a proper time and place the property was sold as required by law; and by the proper officers; (f) the property was not redeemed; (g) the person who executed the deed was the proper officer.'

"In *Bank of Lemoore* v. *Fulgham*, 151 Cal. 234, 239, 240, [90 Pac. 936], the scope of the conclusive evidence clause is defined. Section 3680 of the Political Code provides that upon all bills or statements there must be stamped the words 'sold for taxes' and the date of sale. In the case before the court this memorandum was not made, and it was urged that this provision was intended as notice required to be given the owner, and a failure to give it deprived him of his property without due process of law. The court said: 'Of course it is true that the legislature has not the power to make such a certificate or deed conclusive as to any of the essentials of the listing, valuation, apportionment, or notice (Cooley on Taxation, pp. 355, 356; 1 Blackwell on Tax Titles, sec. 640), but it can make the certificate or deed conclusive as to matters or things which in the first instance the legislature might not have required to be done, and which are in their nature,

therefore, nonessentials. But there is nothing in the law which makes the giving of such a notice essential—no rights of the taxpayer would be violated if such a provision for notice were not required at all. . . . It is quite within its power to do away with this provision or as here, to hold that the tax deed shall be conclusive evidence that it was given.' (See *Smith* v. *Furlong,* 160 Cal. 522, 527, [117 Pac. 527].)

"The invalidity of the certificate of sale is urged: (a) because it is not dated on the day of the sale; (b) it does not specify when the purchaser will be entitled to a deed; (c) it does not give the name of the person assessed. The certificates are identical in substance. Taking the certificate of the sale on the assessment to D. Bruschie, it states that the property, describing it, was duly assessed as required by law, by the proper officers of said district and for the purposes thereof, in the year 1905; that the name of the person so assessed was D. Bruscia; that said property was equalized as required by law; that the assessments were levied in accordance with law and the amount of the assessment is the sum of $8.16 and the year of the assessment 1905; that 'the assessments were not paid; that at the proper time and place, after all due and legal proceedings heretofore had, I did, on this twentieth day of February, 1906, offer the said real estate (describing it, being lots 28 and 29) for sale for said assessments'; that M. L. Cooper became the purchaser. 'Said property may be redeemed within twelve months from the date of said purchase, viz., this twentieth day of February, 1906, by the person and in the manner as provided by law and if the property is not so redeemed, said purchaser will, on or after said expiration of twelve months from the date of sale and purchase and after having complied with the provisions of the law relating to his right thereto be entitled to a deed.' The certificate then states that a description of the land as in the certificate has been entered in a book kept as a record by said district known as volume 1, Certificate of Sale, which description is numbered 809 on the margin and is put on this certificate as the number thereof.

" 'In witness whereof I have signed this certificate, and filed a duplicate thereof in the office of the county recorder of the said county of Stanislaus, in which said land sold is situated, this third day of March, 1906. G. R. Stoddard, Collector of Modesto Irrigation District.'

"Section 45 of the act of 1897, among other things, provides that 'the collector must make out in duplicate a certificate dated on the day of sale stating (when known) the name of the person assessed . . . and specifying the time when the purchaser will be entitled to a deed.' The certificate was made out in duplicate but was dated March 3, 1906, instead of February 20, 1906, the day of the sale. But it clearly appears in the certificate that the sale was made on February 20th, for it is twice stated and it as clearly therein appears that the 'property may be redeemed within twelve months from the date of said purchase, viz., this twentieth day of February, 1906,' and if not so redeemed, 'said purchaser will, on or after the expiration of twelve months from the date of sale and purchase, and after having complied with the provisions of the law relating to the right thereto be entitled to a deed.' The certificate gives the name of the owner of the assessed property as D. Bruscia. The name of the owner in the assessment-roll is D. Bruschie. One of the objects of the certificate doubtless is to give notice to the owner of the date of the sale and to inform him when the purchaser will be entitled to a deed, i. e., inform him of the period of redemption. We think the purpose of the statute in this regard is fully met by the statement found in the body of the certificate. (*Best* v. *Wohlford,* 153 Cal. 20, 21, [94 Pac. 98].) The Idaho Revised Codes, section 1759, provides that after receiving the amount of the taxes and costs from the purchaser at tax sale the collector must make out in duplicate a certificate dated on the day of sale. In *McGowan* v. *Elder,* 19 Idaho, 153, [113 Pac. 103], the tax sale was on July 8, 1904, and the certificate was dated July 9, 1904. The Idaho supreme court held it good and that the provision of the statute is directory and not mandatory. The decision of this point does not, as appellant contends, rest upon the provision of the statute that no assessment is illegal on account of informality.

"The objection to the deed is the same as one of the objections to the certificate of sale—that the party assessed is 'D. Bruschie,' whereas the name of the person assessed as given in the certificate and deed is 'D. Bruscia.' Section 35 of the Irrigation Act requires the assessor of the district to assess all the real property of the district to the persons who

own the same. 'He must prepare an assessment-book, with appropriate headings, in which must be listed all such property within the district, in which must be specified under the appropriate head: (a) The name of the person to whom the property is assessed; . . .' Section 45 requires the assessor in his certificate of sale to state the name of the person assessed. Section 48, among other things, states that, 'The matter recited in the certificate of sale must be recited in the deed.' Just how much of the matter and what particular matter 'must be recited in the deed' the statute does not inform us. It does not in terms require that the deed shall contain the name of the person assessed. But the statute requires that the name of the person assessed should appear on the assessment-roll and also in the certificate of sale. It would seem reasonable to hold that 'the matter' referred to in section 48 includes the name of the person assessed. The point now before us being raised on both the certificate of sale and the deed, it may be considered in connection with both.

"Appellant relies upon *Henderson* v. *De Turk,* 164 Cal. 296, [128 Pac. 747]. In that case defendant claimed solely upon a deed from the state based on a sale and alleged deed to the state on account of delinquent taxes. The deed to the state recited the name of the person assessed as 'E. W. Davis,' while the assessment was to 'E. W. Davies.' Section 3785 of the Political Code provided that the deed must recite, among other things, 'the name of the person assessed.' It was held that 'this means, of course, the name of the person assessed as it appears on the assessment-roll,' and that a deed which 'misrecites or fails to recite any one of the facts required by statute to be recited therein is void.' It was also held, on the authority of *Emeric* v. *Alvarado,* 90 Cal. 444, 465, [27 Pac. 356], that the rule of *idem sonans* does not apply 'to assessments and other cases of description, where the written name is material.' It was further held, in the *Henderson* v. *De Turk* case, that the failure of the deed to recite correctly the name of the party assessed is not remedied or cured by either the section 3807 or 3628 of the Political Code, because section 3628 refers only to the assessment which is not rendered invalid by reason of a mistake in the name of the owner. Section 3807 provides: 'When land is sold for taxes correctly imposed as the property of a particular per-

son, no misnomer of the owner, or supposed owner, or other mistake relating to the ownership thereof, affects the sale, or renders it void or voidable.' Of this section the court said: 'It does not purport to apply to the deed made in pursuance of the sale . . . and cannot be held to dispense with the requirement that the deed shall correctly recite the name of the person to whom the property was assessed, as a condition to its validity.' Finally, it was held that section 3787 of the Political Code 'makes such a tax deed evidence of regularity of such proceedings as are named therein only when it is a deed conforming to the requirements of the law. The deed relied upon was held to be invalid.

"Turning to the Irrigation Act, we find, as already pointed out, that section 35 makes it the duty of the assessor to assess all real property at times stated. 'He must prepare an assessment-book, with appropriate headings, in which must be listed all such property within the district, in which must be specified, in separate columns, under the appropriate head: (a) The name of the person to whom the property is assessed (if the name is not known, . . . to unknown owners); (b) land (describing it) . . .' On the last day of December of each year, 'all unpaid assessments are delinquent,' etc. (Sec. 41.) Sections 42 and 43 provide how the delinquent tax sale is to be conducted and who may purchase, etc.. Section 45 provides for issuing a certificate of sale to the purchaser: 'After reciting the amount of assessments and costs, the collector must make out in duplicate a certificate dated on the day of sale, stating (when known) the name of the person assessed,' etc., and section 46 provides that, before delivering any certificate, the collector 'must in a book enter a description of the land sold, corresponding with the description in the certificate, the date of sale, purchasers' names, and amount paid,' etc., but does not require to be entered in this book the name of the person assessed, as does the certificate. Section 47 provides how and when redemption may be made, and section 48 provides that if the property is not redeemed, the collector 'must make to the purchaser, or his assignee, a deed of the property' and 'such deed duly acknowledged or proved is *prima facie* evidence that'—then follow the seven several facts thus made *prima facie* evidence, and the conclusive evidence clause already quoted. Section 50 is the same

as section 3807 of the Political Code mentioned in *Henderson*
v. *De Turk,* 164 Cal. 296, [128 Pac. 747]. We thus find a
very close parallel between the general code provisions for
assessments and delinquent tax sales and the provisions of
the Irrigation Act. The property must be assessed to the
owner (sec. 35); the certificate of sale must state 'the name
of the person assessed.' (Sec. 45.) 'The matter recited in
the certificate of sale must be recited in the deed.' (Sec. 48.)

"As to section 50, which is the same as section 3807 of the
Political Code, the case cited holds that it 'cannot be held
to dispense with the requirement that the deed shall *correctly*
recite the name of the person to whom the property was as-
sessed, as a condition of its validity.' As to the conclusive
evidence provision, holding it to mean, as we do, the same as
the like provision in the Political Code (sec. 3187), the court
said, in the case cited, that said section 'makes such tax deed
evidence of regularity of such proceedings as are named
therein *only* when it is a deed conforming to the requirements
of the law,' that is to say, in the case then before the court,
conforming to the requirement that the deed must correctly
recite the name of the person to whom the land was assessed.

"We are brought to the single consideration—Is the re-
quirement in the certificate of sale and in the deed that there
must appear therein 'the name of the person assessed'—such
an essential in the proceedings as could not be dispensed with
by the legislature, or may it be classed as a nonessential and
subject to the rule laid down in *Bank of Lemoore* v. *Fulgham,*
151 Cal. 234, [90 Pac. 936], where it was held that the legis-
lature can make the certificate or deed conclusive as to matters
or things which in the first instance the legislature might not
have required to be done, and which, in their nature, there-
fore, are nonessentials? It was said, in the case cited, that
the legislature has not the power to make such a certificate
or deed conclusive as to any of the essentials of listing,
valuation, apportionment, or notice. (Cooley on Taxation,
pp. 355, 363; Blackwell on Tax Titles, sec. 640.) What is
meant by 'listing' the land? Mr. Cooley says: 'An assess-
ment consists of two processes of listing the persons, prop-
erty, etc., to be taxed, and of extending the sums which are
to be the guide in an apportionment of the tax between them.'
(1 Cooley on Taxation, p. 596). Mr. Black says: 'Statutes

generally require that real property shall be listed and assessed to the owner or to the occupant; and it is generally admitted that this requirement is imperative and a compliance with it essential to jurisdiction.' (Black on Tax Titles, sec. 105, citing *State* v. *Vanderbilt*, 33 N. J. L. 38, where it was held that real estate must be assessed in the name of some person or persons or corporation, as the owner thereof.)

"It seems to us that the 'listing' of land for assessment necessarily means that the name of the owner, if known, and a description of the property assessed must be stated and, as was held in the De Turk case, '*correctly* stated.' In the present case, the assessment was to 'D. Bruschie.' The certificate of sale and the deed recited the name as 'D. Bruscia.'

"We confess to some regret at not being able to find some way to escape from following the rule laid down in *Henderson* v. *De Turk*, 164 Cal. 296, [128 Pac. 747]. The record shows that the state and county tax on these lots was delinquent for several years prior to 1905, and they were sold to the state and were redeemed by Cooper after he purchased the land at tax sale in 1906. The owners seem to have paid no heed to their duty to the state and not until valuable and expensive improvements were in good faith put upon the lots did they assert any claim to them. The law, however, we conceive to be the same, under the facts appearing, as if no improvements had been made on the lots, and we are constrained to follow the law as our supreme court has established it.

"We have vainly tried to convince ourselves that the name of the owner cannot be deemed an essential in the assessment on the theory that section 3628 of the Political Code and section 50 of the Irrigation Act expressly provide that no misnomer of the owner 'affects the sale,' and on the theory that if the name is not known to the assessor the assessment may be made to 'unknown owners.' It might be said that the owner of the land is presumed to know its description, and that the recorded duplicate certificate is notice to him if it correctly describes the land, whether or not his name appears as the owner, and hence, 'the name of the person assessed' might be dispensed with by the legislature as a nonessential. We cannot accept such reasoning as sound, for we are always brought back to the proposition that the essential requirement of 'listing' land for assessment necessarily involves the

coupling of the owner's name, if known, with the description of the land, and if not known, a statement of that fact.''
The judgment is reversed.

Hart, J., and Ellison, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 3, 1916, and the following opinion then rendered thereon:

SHAW, J.—The petition for a rehearing of this cause in the supreme court is denied.

Nothing in the opinion should be deemed to hold that the correct name of the owner is so essential to a tax assessment or a certificate of tax sale that an error therein as to the name of the owner cannot be cured by the section making the deed conclusive evidence of the regularity of the assessment and certificate. The decision can be supported on the ground that the conclusive evidence clause does not extend to defects in the deed itself, as was held in *Henderson v. De Turk,* 164 Cal. 296, [128 Pac. 747].

Melvin, J., Lorigan, J., Sloss, J., and Lawlor, J., concurred.