[Civ. No. 2688.   Fourth Dist.   Feb. 24, 1942.]

WM. R. BIAGGI, Appellant, v. ETHEL M. PHILLIPS et al., Defendants; DAVID F. APPLING, Respondent.

Wm. R. Biaggi in pro. per. for Appellant.

Iener W. Nielsen, Harold V. Thompson and W. O. Watters for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from a decree adjudging that defendant and respondent David F. Appling is the owner of three parcels of real property in Fresno County, described in the appellant's complaint and in respondent's cross-complaint, as follows:

"Lots 48, 56 and 66 in Block 8; Lots 95 to 98 inclusive, in Block 9, as said Lots and blocks are laid down and delineated upon the Map of the East Coalinga Oil Fields, Fresno County, California, being a subdivision of the Southwest quarter of Section 30, Township 19 South, Range 16 East, M. D. B. & M. Surveyed June 1919 by T. F. Harrold, C. E. Said map having been filed for record July 15, 1919 in Volume 8, pages 50 to 54 of Plats, in the office of the County Recorder of Fresno County, California."

It was stipulated at the trial that the appellant, by virtue

of a deed from Wm. A. Radford, Jr., introduced in evidence by appellant, was the owner and holder of the record title subject to the validity of respondent's tax deed and of the tax proceedings leading up to the issuance of the same.

Respondent Appling claims title to the said three parcels of land by virtue of a tax deed executed and delivered to him on June 14, 1938, by L. V. Hatch, Tax Collector of Fresno County, pursuant to a tax sale held under the provisions of section 3897 of the Political Code.

The tax collector testified that on June 11, 1932, and in consideration of $1.63, a deed was executed conveying said three parcels to the State of California.

The property in question appears on the 1926 assessment roll as assessed to Wm. A. Radford, Jr., 1827 Prairie Avenue, Chicago, Ill., and described as "East Coalinga Oilfields; Lots 48, 56, 66 Blk 8, Sec. 30, Twp. 19 S., Range 16 E."

The property was originally marked on the assessment roll "Sold to the State" under section 3771 of the Political Code on June 26, 1927, because of nonpayment of taxes levied and assessed for the year 1926, amounting to $1.64. The delinquent tax list, as published in 1927, states the total amount of taxes, penalties and costs due and payable amounted to $1.64. In the Addenda Notice attached to the delinquent tax list published in 1932, the least acceptable bid or amount necessary to redeem the property prior to its being sold or deeded to the state is set forth as $1.63. In the Addenda Notice, as so published in 1932, the property is described as "East Coalinga Oil Fields, Lots 48, 56, 66 Block 8, Sec. 30, Twp. 19, Rg. 16." In the Notice of Sale published on May 9, 1938, the property is described as "East Coalinga Oilfields, Sec. 30, Twp. 19 S., Rg. 16 E., Lots 48, 56, 66 Block 8, assessed to *William A. Bradford, Jr.*, for the fiscal years 1926 to 1932, inclusive. Said property was sold to the State June 21, 1927, for delinquent taxes of 1926, Certificate of Sale No. 788. Deed No. 788 was issued to State of California June 30, 1932, and recorded in Vol. 1225, Page 360 of Official Records of Fresno County. All of the above lots and blocks being in East Coalinga Oilfields Subdivision in Section 30, Twp. 19, Rg. 16, M. D. B. & M., according to the map filed July 15, 1919 in Vol. 8, Pages 50 to 54 of Plats in the office of the Recorder of Fresno County."

A copy of said Notice of Sale was sent by registered mail to Wm. A. Radford, Jr., and was received by him, as were

approximately twenty other notices mailed to him between the first sale of delinquency and the final sale.

The records in the various steps in the tax proceedings were introduced in evidence and will be referred to hereafter, so far as it is necessary to do so.

The court below found in favor of respondent and judgment was entered decreeing that respondent was the owner of said real property, and this appeal is from said judgment.

Appellant's first contention is that the sale of said property on June 2, 1938, was in violation of section 3817d of the Political Code, as amended in 1937, which section, so far as pertinent here, reads as follows:

"Notwithstanding the provisions of section 3764 and 3771a of this code no sale at auction to the public shall be made of unredeemed property in the years of 1937 or 1938 or in the month of January, 1939, but at the day and hour fixed in accordance with subdivision (2) of section 3764 of this code all property otherwise subject to sale to the public shall be deeded to the State as provided in section 3785 of this code. No sale of any property, except property sold to the State for delinquent taxes in the year 1930, or at any time prior to 1930 shall be made in accordance with the provisions of section 3897, 3897a and 3897b of this code after the effective date of this act and prior to the first day of February, 1939. Property sold to the State for delinquent taxes in the year 1930 or prior to 1930, and deeded to the State pursuant to section 3785 of this code, shall be subject to sale under the provisions of section 3897 of this code."

The section just quoted was a continuation of a series of so-called tax moratorium laws which began with the enactment of the original section 3817d at the 1933 session of the legislature, which laws were the result of the economic depression and which were enacted as urgency measures. In 1933, the legislature provided in said section that no sale at public auction should be made of unredeemed property in the years 1933 and 1934. At the special session of 1934 said section 3817d was amended to provide that no such sale should be made prior to July, 1936. In 1935, said section was amended to read practically the same as at present except as to dates, and it was provided therein that "No sale of any property, except property *sold to the State* for delinquent taxes in the year 1925, or at any date prior to 1925, shall be made in accordance with the provisions of section 3897 of this code after the effec-

tive date of this act and prior to the first day of January, 1938.'' (Italics ours.) At the 1937 session section 3817d was again amended, the principal change being to make the above-quoted clause read ''No sale of any property, except property *sold to the State* for delinquent taxes in the year 1930, or at any time prior to 1930 shall be made in accordance with the provisions of section 3897, 3897a and 3897b of this code after the effective date of this act and prior to the first day of February, 1939.'' (Italics ours.)

Appellant contends that in the 1937 amendment to section 3817d the legislature intended that the tax moratorium should apply to all property sold and deeded to the state subsequent to 1930, and that no valid sale of said property could be held until after February 1, 1939.

Appellant argues that the language in section 3771 reading ''shall by operation of law and the declaration of the tax collector, be *sold to the State,* and said tax collector shall make in appropriate columns on the delinquent list, opposite each· parcel of land to be sold an entry, '*Sold to the State*','' was not the real sale to the state and was not the sale referred to by the legislature in the language in section 3817d, ''*sold to the State* for delinquent taxes.'' (Italics ours.) (Citing *Sawyer* v. *Berkeley Securities Co.,* 99 Cal. App. 545 [279 Pac. 217] and *Ducey* v. *Dambacher,* 27 Cal. App. (2d) 658 [81 Pac. (2d) 597].)

These cases, cited by appellant, do not aid us in arriving at what the legislature intended in enacting section 3817d. A case more in point is *Kipp* v. *Billingham,* 217 Cal. 527 [20 Pac. (2d) 318], where the court said, at page 528:

''The purpose of the notice is to give the taxpayer an opportunity to pay his taxes before the title, by operation of law, passes from him. (*Bank of Lemoore* v. *Fulgham,* 151 Cal. 234 [90 Pac. 936].) While we use an expression denoting that he is divested of title, it is not literally true where the deed is not to be issued until after five years have elapsed. It is said in *Santa Barbara* v. *Savings & Loan Soc.,* 137 Cal. 463 [70 Pac. 457]: 'Such sale vests an equitable title in the state, and at the expiration of five years, if the property is not redeemed in the meantime, the deed of the tax collector to the state vests in it the legal title, and the controller may then direct the tax collector to sell at public auction, to the highest bidder, at a sum not less than all the delinquent taxes, penalties, and interest.' ''

As we view the matter, it is quite clear to us that when the legislature used the language "except property sold to the state for delinquent taxes in the year 1930 or at any time prior to 1930," it referred to the sale by operation of law mentioned in section 3771. ██ It is a matter of common knowledge that in the publication of every delinquent tax list there is a statement, as required by section 3767, that on a date fixed the property "will, by operation of law, be *sold to the state.*" (Italics ours.) ██ To uphold appellant's contention we would have to believe that the legislature, in 1937, intended to pass a law preventing the sale at public auction of land upon which taxes had not been paid since 1925, a period of twelve years. Had the legislature so intended, it could very easily have said so. The great majority of taxpayers understand that if they permit their taxes to become delinquent, the property assessed is *"sold to the State"* and we believe that the only reasonable construction of the statute here involved is that the legislature intended that any property sold to the state under section 3771 in 1930, or prior thereto, even though deeded to the state under section 3785 after 1930, was subject to sale under section 3897.

██ Appellant's second contention is that respondent's tax title is void "because the descriptions contained in the 1926 assessment roll, in the 1927 delinquent tax list, in the Addenda Sale Notice attached to the 1932 delinquent tax list, and in the Notice of Sale of May 9, 1938, given by the tax collector of Fresno County pursuant to section 3897 of the Political Code, are insufficient, invalid and void."

The property herein involved is described in the 1926 assessment roll as follows: "East Coalinga Oilfields, Lots 48, 56, 66, Blk. 8, sec. 30 Twp. 19 S. Range 16 East." In the 1927 delinquent tax list the property in question is described as: "East Coalinga Oil Fields, Lots 48, 56, and 66, Block 8."

In the Addenda Notice of Sale at public auction of property for delinquent taxes of 1926, attached to the 1932 delinquent tax list, the property is described as: "East Coalinga Oilfields, Lots 48, 56, 66 Block 8, Sec. 30, Twp. 19 S., Rg. 16 E."

In the Notice of Sale of property of the state given by the tax collector pursuant to section 3897, the property is described as "East Coalinga Oilfields, sec. 30, Twp. 19 S., Rg. 16 E., Lots 48, 56, 66, Block 8."

Appellant contends that all of the foregoing descriptions

are uncertain and void, and cites numerous cases in support of his contention.

Section 3650 of the Political Code provides for the contents of the assessor's assessment book and states that it must show, among other things,: "Land, by township, range, section or fractional section; and when such land is not a congressional division, or subdivision, by metes and bounds, *or other description sufficient to identify it.*" (Italics ours.)

Section 3897 of the Political Code requires that the Notice of Sale of real property thereunder shall contain "a description of the property to be sold, sufficient for identification."

The true test to be applied in this case is to determine whether or not the various descriptions of the property are sufficient to identify the property. The question of sufficiency is a question of fact to be determined by the court from the evidence.

In *Lummer* v. *Unruh,* 25 Cal. App. 97 [142 Pac. 914], the court said, at page 104:

"Says Mr. Cooley in his work on Taxation: 'The designation of the land will be sufficient if it affords the owner a means of identification and does not positively mislead him, or is not calculated to mislead him.' To the same effect are the decisions of the Supreme Court of this state. (See: *Best* v. *Wohlford,* 144 Cal. [733,] 736, [78 Pac. 293] ; *San Francisco* v. *Pennie,* 93 Cal. 465 [29 Pac. 66] ; *San Francisco* v. *Flood,* 64 Cal. 504 [2 Pac. 264].)" (See also, *Numitor Gold Mining Co.* v. *Katzer,* 83 Cal. App. 161 [256 Pac. 464].)

In the case at bar, plaintiff's complaint described the property as:

"Lots 48, 56 and 66, in Block 8, Lots 95 to 98, inclusive, in Block 9, as said lots and blocks are laid down and delineated upon the Map of the East Coalinga Oil Fields, Fresno County, California, being a subdivision of the Southwest quarter of Section 30, Township 19, South, Range 16 east, M. D. B. & M. Surveyed June 1919 by T. F. Harrold, C. E. Said map having been filed for record July 15, 1919 in Volume 8, pages 50 to 54 of Plats, in the office of the County Recorder of Fresno County, California."

In the deed from Wm. A. Radford, Jr., to appellant, introduced in evidence by appellant, the property is described the same as in the complaint. The evidence thus shows that there was a recorded map of East Coalinga Oilfields and that the land could easily be identified in the various steps of

the tax proceedings, as the lots and block and section were correctly stated. Furthermore, the evidence shows that at least twenty notices containing the description of the property, as stated on the assessment roll, were sent to Wm. A. Radford, Jr., prior to the tax sale in 1938.

We believe that the record in this case is ample to satisfy the requirement of section 3897, and of the other sections, that the description of the property should be "sufficient to identify it."

The fourth contention urged by appellant is that the Notice of Sale of June 2, 1938, did not set forth the correct name of the taxpayer and that the tax sale and respondent's deed are, therefore, void.

Section 3897 provides that the Notice of Sale published and mailed shall "contain the name of the person to whom the property was assessed, on the county assessment roll for each year on which there may be delinquent taxes against said property."

The Notice of Sale pursuant to section 3897, here attacked, as published in the newspaper and as mailed to Wm. A. Radford, Jr., and received by him, stated that the property was assessed to *William A. Bradford, Jr.* for the fiscal years 1926 to 1932, inclusive.

In construing a similar requirement contained in section 3785, our Supreme Court, in the case of *Henderson* v. *De Turk*, 164 Cal. 296 [128 Pac. 747], said, at page 297:

"Defendant claims solely under a deed from the state based on a sale and alleged deed to the state on account of delinquent taxes. The deed to the state recited the name of the person assessed as 'E. W. Davies,' while the assessment was to 'E. W. Davis.'

"The law in force both at the time of the sale and the time of the execution of the deed, provided that the deed to the state must recite, among other things, 'the name of the person assessed.' (Pol. Code, sec. 3785.) This means, of course, the name of the person assessed *as it appears upon the assessment-roll.* It has uniformly been held in this state that a tax deed which misrecites or omits to recite any one of the facts required by the statute to be recited has no effect at all as a conveyance, the theory being that it is competent for the legislature to prescribe the form of instrument which, as the result of a proceeding *in invitum* can alone divest the citizen of his title, and that where the statute prescribes the

particular form of the tax deed, the form becomes substance, and must be strictly pursued, and it is not for the courts to inquire whether the required recitals are of material facts or otherwise. (See *Baird* v. *Monroe,* 150 Cal. 560, 564 [89 Pac. 352], and cases there cited.) The particular point here involved was decided in *Grimm* v. *O'Connell,* 54 Cal. 522, where the assessment was to 'Charles Grimm,' and the tax deed recited that the property was assessed to 'Charles Grimm and all owners or claimants known or unknown.' It was held, upon the theory above stated, that the deed was void because it failed to correctly recite the name of the person assessed. There are other decisions holding that any such deed is void when it misrecites or omits to recite any one of the facts required by statute to be recited therein, and there is no decision laying down a different rule. As is substantially said in respondent's petition for a rehearing. these decisions constitute a rule of property from which the court should not depart.

"The deed cannot be held valid by applying the rule of idem sonans, if we are to adhere to the ruling in *Emeric* v. *Alvarado,* 90 Cal. 444, 465 [27 Pac. 356]. There the assessment was to 'Castero,' while the owner's name was 'Castro.' The court said: 'It is not a case to which the rule of idem sonans applies. Tax proceedings are *in invitum,* and, to be valid, must closely follow the statute, and idem sonans applies to cases of pleas of misnomer and issues of identity, where the question is whether the change of letters alters the sound —not to assessments and other cases of description, where the written name is material. "Different letters will make different names, though the sound be the same." The deed to Pollard described the land sold as having been assessed to "Castro" and does not purport to be made in pursuance of an assessment to "Castero." ' While there is a diversity of opinion in other jurisdictions on this point, we think this ruling should be followed in this state."

(See, also, *Bruschi* v. *Cooper,* 30 Cal. App. 682 [159 Pac. 728, 734]; Cooley on Taxation, vol. 3, p. 2801; *Clayton* v. *Schultz,* 22 Cal. App. (2d) 72 [70 Pac. (2d) 512].)

Respondent, in answer to appellant's argument, contents himself with the very brief statement that appellant has cited cases "which would purport to hold that a slight misspelling of the taxpayer's name in the notice of sale is fatally defective and respondent cites the case of *Bell* v. *Fee Title*

*Company,* 69 Cal. App. 437 [231 Pac. 598], where it is held that the fact that the notice of sale contained the owner's name spelled Leonide Ducommun, while the deed showed the name to be spelled Leonide Ducommen did not render the tax sale void. Respondent asserts that this case "is to the effect that delinquent taxpayers cannot rely on such a trivial mistake to defeat the purpose of tax legislation," and respondent calls attention to the fact that the record shows that the tax owner received the notice of sale mailed to him. We do not believe that appellant's contention and authorities on this point can be brushed aside thus lightly. Respondent has cited no authority, and we have been unable to find any, holding that the fact that the tax owner received the notice mailed to him served to cure errors or omissions occurring in the published notice. It cannot reasonably be argued that Wm. A. Radford, Jr. and William A. Bradford, Jr. are not entirely different names.

It is clear from the authorities that it has become a fixed rule of property in California that in proceedings to sell property for unpaid taxes, no requirement of the statute can be disregarded, and that parties who purchase properties at tax sales acquire the title to the property purchased only if all the proceedings for the levy of taxes and the sale are in strict conformity to the requirements of the various statutes governing the same. Tax proceedings in California are *in invitum* and are strictly construed. (*Galbreath* v. *Dingley,* 43 Cal. App. (2d) 330 [110 Pac. (2d) 697]; *Jordan* v. *Beale,* 172 Cal. 226 [155 Pac. 990]; *Warden* v. *Ratterree,* 215 Cal. 215 [9 Pac. (2d) 215, 86 A. L. R. 1204]; *Knoke* v. *Swan,* 2 Cal. (2d) 630 [42 Pac. (2d) 1019, 97 A. L. R. 841].)

In view of the authorities hereinbefore referred to, we must conclude that the failure of the tax collector to correctly state in the notice of sale the name of the person to whom the property was assessed, was an omission and irregularity which rendered the tax sale invalid and is fatal to the title of respondent, which is based upon a deed issued at said sale.

Appellant raises several additional points, but because the point just discussed is fatal to the judgment it is not necessary to prolong this opinion unduly by discussing them.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.